IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JEFFERY F. BYRD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:07cv1036-CSC |
| ) | (WO) |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

**I. Introduction**

The plaintiff, Jeffery F. Byrd ("Byrd"), applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and supplemental security income benefits pursuant to Title XVI, 42 U.S.C. § 1381, *et seq.*, alleging that he was unable to work because of a disability. His application was denied at the initial administrative level. Byrd then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. § 405(g) and § 1631(c)(3). Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

73.1, the parties have consented to entry of final judgment by the United States Magistrate Judge.  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. § 404.1520, §416.920.

> (1)  Is the person presently unemployed?
> (2)  Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the person unable to perform his or her former occupation?
> (5)  Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases.  *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. Administrative Proceedings

Byrd was 39 years old at the time of the hearing before the ALJ. (R. 707.) He is a highschool graduate and has completed two years of college. (R. 708.) Byrd's prior work experience includes working as a youth counselor, custodian, and loader. (R. 696.) Byrd alleges that he became disabled on December 10, 2002, due to high blood pressure, diabetes, hip surgery, right knee surgery, back pain, and tendonitis and arthritis in both knees. (R. 26, 682-83, 685, 688-90, 710, 712.) Following the hearing, the ALJ concluded that Byrd suffers from severe impairments of status post right hip fracture with open reduction and internal

fixation followed by subsequent removal of the implanted hardware, status post right knee posterolateral reconstructive surgery, lower back problems, and diabetes mellitus. (R. 29.) The ALJ also determined that Byrd is unable to perform his past relevant work. (R. 38.) Based on the testimony of a vocational expert, the ALJ concluded that there were a significant number of jobs existing in the national economy that Byrd could perform, including working as a dispatcher, an information clerk, and a surveillance system monitor. (R. 34.) Accordingly, the ALJ concluded that Byrd was not disabled. (R. 34A.)

### IV. The Plaintiff's Claims

As stated by Byrd, he presents the following issues for the court's review:

1. The Commissioner's decision should be reversed, because the ALJ's RFC finding lacks the support of substantial evidence.

2. The Commissioner's decision should be reversed, because the ALJ substituted his medical opinion for that of a medical doctor.

(Doc. No. 15, Pl's Brief, p. 1.)

### V. Discussion

Byrd asserts that the ALJ improperly discounted the opinions of two consultative examiners when determining that he had the residual functional capacity to perform sedentary work or work which involves lifting and/or carrying ten pounds occasionally and five pounds frequently. Specifically, he contends that the ALJ improperly discounted Dr. David Arnold's opinion that his ability to lift and carry is significantly limited.[4] In addition, Byrd claims that

---

[4] In his brief, Byrd asserts that "Dr. Arnold . . . expressed that [his] medically determinable impairments significantly limited his ability to perform prolonged lifting and carrying." (Doc. No, 13, pp. 12-13.) The representation that Dr. Arnold found that Byrd was unable to perform "prolonged" lifting and carrying is a mischaracterization of the evidence. The record indicates that Dr. Arnold concluded that the

the ALJ erred in failing to specify the weight he accorded to Dr. David Atchley's opinion.

In assessing the medical evidence in a Social Security case, the ALJ is "required to state with particularity the weight he gave the different medical opinions and the reasons therefor." *Shafarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). The opinion of a claimant's treating physician must be accorded substantial weight unless good cause exists for not doing so. *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986.); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). However, the weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence of the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ may "reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). *See also Shafarz, supra*.

In this case, the ALJ rejected Dr. Arnold's opinion that Byrd would be limited to lifting and/or carrying five pounds occasionally and one pound frequently, that he could sit for no more than four hours and stand or walk no more than one hour during a work day, and that he would be absent from work more than four days per month. (R. 33.) Specifically, the ALJ determined that no evidentiary weight should be accorded to Dr. Arnold's opinion on the grounds that his conclusions were not substantiated by the medical evidence and that Byrd was examined by Dr. Arnold only once for the stated purpose of securing disability benefits.

---

"most reasonable lifting and/or carrying expectation for [Byrd] during a normal work day is . . . 5 lbs. occasionally to 1 lb. frequently" and that he would be able to sit no more than four hours and stand no more than one hour during an eight-hour work day. (R. 655.)

(*Id*.)  The ALJ also found that Dr. Arnold incorrectly noted that Byrd had several surgeries to his left knee, instead of his right knee.  (*Id*.)  The ALJ gave greater weight to the opinion of Byrd's treating orthopaedic specialist, Dr. Champ L. Baker, specifically noting that the medical evidence and the general practitioner's notes reflect that Byrd is able to return to work at a sedentary job with light lifting.  (R. 32-33.)  Interestingly, Byrd does not argue that there is good cause to discount his  treating orthopaedic specialist's opinion.  *See Jones*, *supra*.

The medical records indicate that Byrd was examined by Dr. Arnold, a general practitioner, on August 30, 2004.  (R. 655.)  The consultative physician noted that Byrd presented to his office for a pain evaluation and completion of other forms from his lawyer.  (R. 657.)  Dr. Arnold also stated that Byrd had received multiple surgeries to his "left" knee.  (R. 658.)  Thus, the ALJ's discounting of Dr. Arnold's opinion on the basis that he had examined Byrd without a longitudinal history on one occasion and that he incorrectly identified Byrd's left knee as undergoing several surgical procedures is supported by substantial evidence.  That conclusion is further reinforced by comparison of Dr. Arnold's opinion with the opinion of Byrd's treating orthopaedic physician.

Byrd next argues that the ALJ erred when he failed to explain what weight he gave to the opinion of Dr. Atchley, another consultative physician.  Generally, an ALJ's failure to state with particularity the weight given different medical opinions is reversible error.  *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987); *Caldwell v. Barnhart*, 261 Fed. Appx. 188, 190 (11th Cir. 2008).  However, the ALJ's failure to specify the weight accorded to a particular physician is harmless error when a correct application would not contradict the

Commissioner's ultimate findings.  *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983); *Caldwell*, *supra*.

The ALJ referred to some of Dr. Atchley's findings in his summary of the evidence; the ALJ, however, did not specifically discuss this consultative physician's opinion in his analysis.  The record includes a June 2004 disability evaluation prepared by Dr. Atchley, a general practitioner.  Dr. Atchley noted that although Byrd suffered from crepitus and pain in both knees, his range of motion was normal.  (R. 643, 645-46.)  Dr. Atchley also noted that Byrd had some tenderness at the site of the incision from his right hip surgery, that he walked with a slow but otherwise normal gait, and that there was some tenderness over the spinous processes of L3 and L4 and muscle spasms in the left paravertrabal muscles.  (R. 643.)  Dr. Atchley concluded that Byrd would have difficulty performing work-related activities requiring prolonged standing, walking, lifting, carrying, and traveling and that he would be able to tolerate sitting without significant difficulties.  (R. 644.)  Although the ALJ referred to medical records prepared by the consultative physician, he did not specifically state the weight he accorded Dr. Atchley's opinion.  (R. 32.)  Nonetheless, the ALJ's failure to assign weight to Dr. Atchley's findings concerning Byrd's limitations is harmless error because the application of Dr. Atchley's opinion would not have changed the result.  *See Caldwell*, *supra.* The ALJ's determination that Byrd "has the residual functional capacity to perform sedentary work or work which involves lifting and/or carrying 10 pounds occasionally and 5 pounds frequently [and] would need to alternate sitting and standing in order to alleviate symptoms of pain and discomfort" is consistent with Dr. Atchley's opinion that Byrd "would have difficulty performing work-related activities requiring prolonged standing, walking, lifting,

carrying, and traveling[, but] would be able to tolerate sitting without significant difficulties." This court therefore concludes that the ALJ's error in failing to consider or assign weight to Dr. Atchley's opinion is harmless.

Byrd also complains that the ALJ's residual functional capacity assessment is not supported by substantial evidence because the ALJ failed to properly consider the effect of his diabetes on his ability to work. The court disagrees. In his analysis, the ALJ discussed Byrd's limitations from his diabetic condition as follows:

> Although the claimant alleges fatigue from diabetes, the evidence reflects that since his alleged onset date of disability, he operated a seasonal lawn cutting business, inconsistent for someone with extreme fatigue (Exhibit B-9F). There is no evidence of end organ damage or other complications from his diabetes mellitus, as confirmed by tests reflecting normal vision, heart, and lungs (Exhibit B-9F). At the hearing, the attorney proposed that the claimant needs to lie down two to three times during the day, but this allegation is not supported by the evidence of record.

(R. 32.)

The medical records indicate that Byrd infrequently reported fatigue and that there are no reports of end-organ damage as a result of his diabetic condition. In 1998, Dr. David N. Rhyne diagnosed Byrd as suffering from diabetes mellitus Type II. (R. 163, 232-33, 561.) On July 25, 2000, Byrd returned to Dr. Rhyne's office complaining of weakness. (R. 163.) The physician noted that he had not "seen [Byrd] in the past two years with new onset of diabetes 11-98" and that he was "lost to follow-up for two years now." (*Id*.) During another follow-up visit on August 10, 2000, Dr. Rhyne advised Byrd to continue a diabetic diet and monitor his blood sugar level. (R. 231, 560.) On March 12, 2001, Byrd presented to Dr. Rhyne

complaining of thirst and weakness. (R. 230.) Dr. Rhyne noted that Byrd "apparently has not checked his blood sugars at home as directed." (R. 320, 559.) On June 18, 2002, Byrd presented to Dr. Douglas Jones requesting a refill of insulin and reporting that "sometimes [he] feels kind of weak and tired, too, but that is slowly getting better." (R. 555.) Dr. Jones diagnosed Byrd as suffering from diabetes and fatigue and refilled his prescription. (*Id.*) In addition, Dr. Jones advised Byrd of the importance of following up within two weeks with a physician concerning his blood sugar problems. (*Id.*) Thus, the medical records substantially support the ALJ's determination that Byrd has not suffered severe complications from his diabetic condition.

The evidentiary materials also indicate that Byrd engaged in some part-time work activities requiring exertion. For example, Byrd indicated in a work activity report that, between April and June of 2003, he "cleaned and maintained the lawns of four families, mowed, weeded, hauled shrubbery [and] other clippings away and any other requirements instructed by the homeowners [regarding] yard care" and that he worked four days a week and four to five hours at a time every two weeks. (R. 458.) The following year, in June of 2004, Byrd also reported to Dr. Baker that he had started his own lawn mowing business, but that he could work no more than two days due to suffering from knee pain.[5] (R. 574.) Thus, the ALJ's determination that Byrd's diabetic condition did not prevent him from participating in a seasonal lawn service is supported by substantial evidence. Given that the record indicates

---

[5] The court notes that, during the October 23, 2006, hearing, Byrd testified that he started a seasonal lawn service "six or seven months ago," but that another employee cut the grass for him. (R. 707-08.)

that Byrd engaged in some activities requiring exertion and that his treating physician's notes indicate he infrequently complained of fatigue, the court concludes that the ALJ properly considered the effect of Byrd's diabetes on his ability to perform work.

Byrd argues that the ALJ should have accepted Dr. Arnold's assessment of pain rather than improperly substituting his opinion for that of the physician. In an August 2004 pain assessment form, Dr. Arnold indicated that Byrd's pain is present to such an extent as to be distracting to adequate performance of daily activities or work and that physical activity would greatly increase pain to such a degree as to cause distraction or total abandonment of tasks. (R. 656.) The ALJ did not substitute his opinion for that of Dr. Arnold's opinion. Rather, the ALJ discounted Dr. Arnold's opinion, which he is entitled to do. Specifically, the ALJ determined that Dr. Arnold's findings were not substantiated by the medical evidence and that Dr. Arnold was not Byrd's treating physician. As previously discussed, the weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence of the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). The evidentiary materials support the ALJ's rejection of Dr. Arnold's opinion regarding the severity of Byrd's pain. For example, Byrd testified that he does not take any over-the-counter or prescribed medication

for his pain.[6]  (R. 687, 691, 709-10.)  The medical records also indicate that Byrd reported in a May 2002 back pain questionnaire that he "can tolerate the pain ... without having to use painkillers."  (R. 667.)  In addition, Dr. Arnold noted in his August 2004 evaluation that Byrd does not take pain medication.  (R. 656-57.)   Dr. Arnold's conclusory assessment of the severity of Byrd's pain is not supported by the objective medical evidence or the claimant's own testimony regarding his use of pain medication.  Consequently, this court finds that the ALJ's rejection of Dr. Arnold's opinion regarding the severity of Byrd's pain is supported by substantial evidence.

## VI.  Conclusion

Accordingly, it be and is hereby

ORDERED that the decision of the Commissioner be AFFIRMED.

Done this 13th day of August, 2008.

                    /s/Charles S. Coody
         CHARLES S. COODY
         UNITED STATES MAGISTRATE JUDGE

---

[6] The court notes that Byrd did testify that he occasionally takes aspirin when he has a headache.  (R. 691.)